Case number 25-1430 from the Western District of Missouri, Stephanie Gasca et al. v. Anne Precythe et al. Mr. Pritchett, when you're ready. Good morning. May it please the Court. You may. Excuse me. The issue in this case is whether the Prison Litigation Reform Act's attorney's fees limitations apply to a challenge to parole revocation procedures pursued by a class of parolees. Before turning to the merits, though, there is a challenge to the appealability of the January 2024 fee award on the ground that that fee award should have been appealed within 30 days of its entry because the earlier remedial order of November 2020 was a final judgment, which made that fee award independently appealable within 30 days. As explained in the briefs, the 2020 remedial order was not a final judgment itself. That's not what you told us last time, is it? Not in so many words, Judge. No, I mean, that's not what you told us. I agree. The language used was the standard for determining what a final award was, and I don't understand that, Judge. The Court had jurisdiction under 1292A1 anyway, and the Court didn't reach an opinion as to what its jurisdiction was. Now, is it – I guess I'll – what do we do with that? I mean, I think we have the option of holding the state or, you know, the agency to its position. Do you disagree with that, that that's an option we have here? I think it is, but actually there's an easier solution, and that solution – it doesn't matter if that November 2020 award was final or not. That's because the January 2024 fee award was not final because it was an interim award. Now, a lot of the cases you cite, though, involve awards that specifically say these are interim attorney's fees awards, right? I mean, that – I'm not sure that there's a case you cite that doesn't have that. There may be. I'm not sure. But doesn't that matter here where the – I mean, the text – the actual award is different here. It's not described by the district court as an interim award. I don't think it matters, Judge. Okay. You're correct. The judge does not describe the order in this case as interim, but it's plainly an interim award, and that's because it was not and it was never intended to be a final award. After this case was remanded from the earlier appeal and before that January 2024 fee award itself, the district court affirmatively stated it was retaining jurisdiction and it directed the parties to file periodic updates for the next year. Having the case, it was obvious there was going to be more work performed and more attorney's fees. So, just by its nature, it was an interim fee award. You know, that provision in Judge Booz's order is sort of surprising to me. I mean, I was a district judge for a long time. This retaining jurisdiction for really it looks like generally enforcement purposes of what the court decided, that's fairly unusual in my experience. Usually, what you do is you enter the order, and if somebody doesn't comply, somebody brings some sort of a motion or action to compel compliance with the court's previous order. And so, what are we to read into Judge Booz's order? Are we really to read into it as you, I think, are arguing is that, listen, guys, that is a clear indication that the judge thought there was still a lot of game to be played yet and that he was going to retain jurisdiction over all the pending matters, including the attorney's fee. That's absolutely right, Judge. Judge Booz indicated there was more to happen. That being the case, we knew there was going to be more work, and we knew there was going to be another award requested. It was the state's position that the case should have been over at that time anyway and that exactly what you said, it should have been taken up if there were violations in the future. But that's not what the judge did. The judge did retain jurisdiction for a little over a year. So, this was an interim fee award, and that being the case, as the Eleventh Circuit held in the Meyer case cited in the brief, to hold otherwise that that award was appealable independently invites litigants to appeal every attorney's fees order resulting in a proliferation or piecemeal appeals, which isn't something that the court usually wants to contemplate. Because the 2024 fee award was not final, the notice of appeal in this case is timely as to both the January 2024 and the 2025 fee awards. Turning to the merits, the PRA applies to cases filed by prisoners. This is a case that was filed by prisoners. Under the PLRA, the term prisoner includes any person incarcerated in any facility who is accused of violations of the terms and conditions of parole. At the time of both the original and the admitted complaints in this case, all the named plaintiffs admitted in those complaints that they were in the custody of the Missouri Department of Corrections for alleged violations of their parole. These plaintiffs were then approved to represent a class defined as all adult parolees in the state of Missouri who currently face or who in the future will face parole revocation proceedings. This definition, though, will apply only when class members are incarcerated. All parolees facing incarceration, excuse me, revocation proceedings are incarcerated because they're not scheduled for revocation proceedings until after they're arrested and back in custody. That assertion you just made, is that a factual statement or is that a legal argument? I mean, is that undisputed? As far as I know, Judge, it is undisputed. There's affidavits in the record indicating from the parole officials themselves that this is the case. So is the dispute, as you see it, a legal one between the district court's description of the class? Is those... I'll let you go on. My question's still forming in my own mind, so it's best left to me at this point. All right. I'm just wondering if what you're asserting here about everyone who's going to be revoked is in custody, whether that's disputed or not. Because the district court didn't go down that road, I don't think. It's not been disputed to this point as far as I know, Judge. In fact, there were, like I said, there was an affidavit to that effect. So this and all the remedies that are ordered in the case apply only to a parolee who is incarcerated. Because this is a case filed by prisoners that benefits class members only when they are prisoners, the PLRA would apply. And it doesn't matter that the class certified in this case includes some people who may not have been in prison at the time of the certification. And that's because PLRA restrictions have been applied to a number of prisoner class action lawsuits. Those are cited in the brief, which the class includes members who, although not incarcerated at the time of the class certification, may be incarcerated in the future. This application of PLRA restrictions in class actions makes sense in cases as this one, because the remedies at issue will apply only to the members of the class at times they are incarcerated. And if we want to take a step further, we can look at the Montcalm Publishing case out of the Fourth Circuit, I think, in which there was a prisoner case in which a publishing company intervened. The court still said since it was a case brought by a prisoner, the Prison Litigation Reform Act limitations applied, even to the private individual that intervened. Further, the PLRA applies regardless of whether the claim relates to prison conditions. And that's because with certain provisions of the PLRA, section 1997E, do have that restriction that they have to apply to cases involving conditions. That's not the case with section 1997E sub D, which is the attorney's fee provision. Having said that, I'd like to reserve the rest of my time, unless there's questions at this point, for rebuttal. Thank you. Thank you, Douglas. Ms. Malinowski? Thank you. Good morning, and may it please the court. Amy Malinowski for the Appellees. I want to focus my short time this morning on the bookends of this appeal, the issue of jurisdiction and the issue of enhancement. Judge Kobus, you're familiar with this case. This is a case where liability was never in question, where the issue of class certification was never in question, and where the applicability, or rather the inapplicability of the PLRA, also never in question. But appellants, again, are trying to rewrite history here by taking positions that are directly contrary to the positions that they've taken in this case along in which this court, in the first appeal, the district court, and appellees have relied upon. Despite the defendant's attempts to rewrite history here, this court lacks jurisdiction over the 2024 fee award, because it wasn't an interim fee award. And I tend to agree that whether or not Judge Boo used the word interim is sort of immaterial, but the support for our position actually lies in the appellant's brief itself, because every single case that's cited by the state as to what constitutes an interim fee award defines it as a fee award that either leaves the amount to be determined, and so it's not set and final, or it comes before the entry of a judgment. Here we have a totally different situation, because that 2024 fee award, which covered all the work that was done up until a decision on the merits of the case, was final. It determined a specific amount owed. And it also came after the remedial order was affirmed in part on appeal. In fact, the appellees sought an extension of time until the resolution of that appeal to seek fees, and the state represented to this court that it had jurisdiction to review that 2020 remedial order, because it was a final judgment. In its jurisdictional statement, which we did not object to in the first appeal, they invoke this court's jurisdiction under section 1291, which covers final judgments, not under section 1292. And also, importantly, this overlaps with the PLRA issue. They didn't raise the issue of the PLRA, which has some pretty significant restrictions on the scope of available injunctive relief in a class that is filed by prisoners and about prison conditions. It also requires the district court to make certain findings of fact under section 3626. Again, not an argument raised by the state until six years into this litigation. And if you want to see the state's representation as a jurisdiction, it's on the very first page of their brief that was filed five years ago next month, it looks like. Now, in the event that the court reverses the district court's fee orders, or one of the fee orders, we've asked for it to instruct the district court to consider enhancement on remand. And if there aren't questions about jurisdiction, I want to address that argument next. Now, it's correct that, generally speaking, this court has held that if there are issues that are not raised below, they won't be considered by a court of appeals. However, as with every good rule of law, there are exceptions to that rule. As this court noted in Ryder v. Morris, that there are some cases where injustice would otherwise result if you don't allow issues to be considered on remand. This is one of those instances. It would be unjust to preclude us from arguing enhancement on remand for a number of reasons. One is, if the district court's orders on fees are reversed, the fee award that has been awarded to the Appalachian Police Council for work conducted over almost eight years now would be reduced by over half, 51.4%. This is also a case where Appalachian Police Council achieved unequivocal success. In fact, this is a case, the first in my career, where the state conceded liability. In February or January of 2019, seven years ago, it conceded that it was violating the due process rights of thousands of parolees. Now, there's voluminous evidence in the record about the size of the class, the fluidity of the class. The best estimate is there are about 15,000 people on parole in the state of Missouri. At the time that this case was filed, about 7,000 of those were being processed for revocation every year. Now, another point of math is that that means that more than half of this class is not in jail, is not in prison, and reaps the benefits of this decision. So what benefits do they reap from this decision? Yes, well, I'm glad you brought it back to that, because I know that there was some discussion with Mr. Pritchett about whether any of these remedies apply when someone's not incarcerated. And there are, in fact. For example, field violation reports. That was an issue that was addressed by the district court's remedial order. Field violation reports are provided to people on parole before they are revoked. And there are certain instances where a field violation report can recommend that the person be revoked. But there are other options, too. For example, delayed action, which means you might be revoked in the future for this, but we're going to let you stay on parole right now. Or they could continue the person on parole. In other words, they could say, we feel like this is enough evidence to find a violation of one or more of your conditions of parole, but we're going to, rather than revoke you, continue you. So it's just inaccurate to say that the remedies and the issues in this case are only implicated when somebody is in prison. When, in fact, the vast majority, or the majority at least, of the class was not in prison at the time that this case was filed. And that is what makes it distinguishable from the Montcalm case that Mr. Pritchett references. It's much more akin to the Southern District of Ohio case, Turner v. Wilkinson, which is a case that, at its inception, was brought by somebody who was detained and by another plaintiff who was not detained. That's much more akin to this case, where it was clear from its onset that this was a class action lawsuit on behalf of every adult person on parole in the state of Missouri. And the class was certified as such. The other reason I want to go back to enhancement, because the other reason that it would be unjust to preclude the consideration of enhancement on remand, is the simple fact that my law firm, the MacArthur Justice Center, did not charge a dime to the thousands of people that we represented in this nearly decade-long litigation. We bore the risk entirely of litigating this case to vindicate the rights of people on parole. To preclude the district court from considering enhancement would work contrary to the very purpose of Section 1988, which is, as the Supreme Court said, it's meant to ensure effective access to the judicial process for persons with civil right grievances. Although we haven't had the opportunity to present evidence on this point yet, I represent to you that I am 99.9% confident there's not another single attorney in the Eighth Circuit who would have taken this case if we hadn't stepped up. And because of the amount of work that was involved, because of the expense of just communicating with thousands and thousands of class members, retaining experts. We also litigated this case through a global pandemic, and conducted an evidentiary hearing in June of 2020 when the rest of the world was shut down. So this is an exceptional case that warrants enhancement, especially where applying the PLRA rate would result in an unreasonable rate of compensation for counsel. And one more point I want to make about the definition of class and why it matters that so many of the class members were not incarcerated. In their brief, the state says, quite shockingly, at page nine, there's no significant difference between parole review and parole revocation proceedings. Well, the Supreme Court would disagree. In fact, that distinction is what underlies Morrissey v. Brewer and Gagnon v. Scapelli, which announced that because of this distinction, people on parole have a liberty interest, albeit maybe a limited one as opposed to a pretrial detainee, but certainly one that is not enjoyed by the typical prisoner. Now, before I close, I want to say this, that when I first argued this case before this court in November of 2021, I asked the panel to pay attention to what the state does and not just what it says. I ask the same of you today, because regardless of what Mr. Pritchett tells this court today in 2026, for six years, the state operated as if the PLRA does not apply, and it's already benefited from an appeal under Section 1291. So they're stopped equitably from arguing now to the contrary, simply because they're unhappy with the bill that they got as a result of the MacArthur Justice Center having no choice but to step up and act as a private attorney general for the thousands of people on parole that the state has failed to protect. For all these reasons and the reasons stated in our brief, Your Honors, we ask that the district court's fee awards be affirmed. Alternatively, if this court remands, we ask that it instruct the district court to consider in the first instance whether an enhancement under the Lodestar analysis is warranted, given the exceptional success and the difficulty in retaining other counsel to litigate this case. Thank you. Thank you. Mr. Pritchett. With regard to whether or not the PLRA was ever asserted in this case for however many years it's been going on, it wasn't an issue with regard to attorney's fees until the attorney's fees came up. So there was never any discussion of the PLRA as far as I understand before that, at least with respect to the fees. With respect to whether or not this court concludes that maybe some parolees will have, this remedial order will have an impact on parolees if they're not in prison, the fact remains the case was brought by prisoners, which is the term used by the statute. It was a case brought by prisoners and Montcalm would apply, you know, the class came in later. And the Turner case is not applicable because in that case, the private individual and the prisoner brought the case at the same time, which isn't the case here. Turning to enhancement, if I can do this quickly. If this court considers an award is unjust or if that's an element, we might as well be back under Section 1988. The restriction fees under the PLRA was the tradeoff that Congress issued in terms of we would like to proceed quickly. You may. We would like to have a disincentive for frivolous lawsuits. But in the case, some of them aren't frivolous or they are successful. We will grant fees. But again, as part of that tradeoff, we're not going to grant full fees. Thank you. I want to thank the parties for their briefing and their argument. It's been helpful. The case is submitted.